**FILED**

MAR 2 4 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SUSAN H. MINEHAN                          )
13733 Town Line Road                      )
Silver Spring, Maryland 20906-2113        )
(H) (301) 871-1337                        )
Petitioner                                )    Case: 1:08-cv-00499
         v.                              )    Assigned To : Robertson, James
                                                 )    Assign. Date : 3/24/2008
UNITED STATES OFFICE OF SPECIAL COUNSEL )    Description: Pro Se Gen. Civil
1730 M Street, N. W., Suite 300           )
Washington, D. C. 20036-4505              )
(202) 653-7188                            )
Respondent                                )
*************************************************************************

PETITION FOR WRIT OF MANDAMUS

PETITIONER'S BRIEF:

INTRODUCTION

      The Petitioner contends that what started as an administrative clerical error in the

Civilian Personnel Office (CPO) at Walter Reed Army Medical Center (WRAMC),

Washington, D. C., materialized into a lengthy and unresolved problem when WRAMC,

her former employer, failed to implement _nondiscretionary_, and in fact, _mandatory_

application of newly revised position classification standards for the Petitioner's position

(#00577).  The standards were disseminated by the Office of Personnel Management

(OPM), Washington, D. C., and authorized by the Classification Act of 1949.  Also

applicable were various pertinent and firmly established decisions, i.e. Comptroller

General Decision B-134820 (37 Comp. Gen. 492), Comptroller General Decision B-

196638 dated July 10, 1980, and Comptroller General Decision B-165307, 1968.  The

**RECEIVED**

MAR 1 0 2008

Clerk, U.S. District and
Bankruptcy Courts

Petitioner maintains that her former employer's failure to comply was a violation of laws, rules, and regulations, i.e. a Prohibited Personnel Practice.

The Petitioner further contends that had the standards been applied to the position she occupied, the position would have been upgraded from a GS-11 to a GS-12 as determined by experts in the position classification field (substantiation follows). The agency's failure to take corrective action was wrongful, because it violated Section 2301(b)(3), Title 5, United States Code, a Merit System's principle, Equal Pay for Work of Equal Value, which states in part, "(b) Federal personnel management should be implemented consistent with the following merit system principles: ...(3) Equal pay should be provided for work of equal value, with appropriate consideration of both national and local rates paid by employers in the private sector, and appropriate incentives and recognition should be provided for excellence in performance." As part of a task force set up by WRAMC, all individuals occupying the Management Analyst 343 job series had the classification standards applied to their positions; thus, their salaries were commensurate with their job duties. As a result of an administrative oversight, the Petitioner's position was inadvertently omitted from the process.

## BACKGROUND

The Petitioner was employed by Walter Reed Army Medical Center, Washington, District of Columbia. On or about June 1993, a reorganization of the Petitioner's branch took place whereby all employee positions were being evaluated for upgrades. When *all* employees in the branch were subsequently promoted, with the exception of the Petitioner, who was the branch chief and supervisor, the Petitioner filed a request for an Inspector General (IG) investigation with the Office of the Inspector General, U. S. Army

**2**

Medical Command (MEDCOM), Fort Sam Houston, Texas, during mid November 1995. The MEDCOM was Walter Reed's higher headquarters. The Petitioner sought help from the MEDCOM IG, because WRAMC IG assistance in the past had been unsuccessful. The Petitioner was seeking a proper grade determination on Position Description (PD) #00577, a position she occupied as a GS-11, and a salary commensurate with that determination. Pattie Campbell was assigned to conduct the investigation and did so in May 1996 when she flew to Washington, D. C. and spoke directly with several personnel representatives in the Civilian Personnel Office, WRAMC. She also conducted a telephonic interview with Maenell Means, a classification specialist formerly assigned to conduct a review of the Petitioner's job under the branch reorganization. Following her investigation, Ms. Campbell prepared a Report of Inquiry (ROI). The document, dated August 16, 1996, was stamped "FOR OFFICIAL USE ONLY." As a result, the Petitioner was unable to secure an unsanitized copy of the ROI through the Freedom of Information Act (FOIA). She ultimately received an official copy of the document on or about March 1999 with the help of an attorney. The ROI revealed that the Petitioner's position #00577, 343 job series, should have been evaluated against the newly revised classification standards dated August 1990. (Additional information applicable to the ROI follows in this document.)

The investigation also exposed the fact that Ms. Means decided to apply the August 1990 classification standards to the Petitioner's position #00577 after seeing the antiquated position description format and document date. Ms. Means, during the investigation, testified to the IG investigator that the Petitioner's position #00577 graded at a GS-12 level.

The Petitioner fully anticipated corrective action following the Inspector General investigation; however, in a letter dated July 19, 1999 from Colonel Richard L. Ursone, Executive Officer, WRAMC, the Colonel stated, "We should also point out that recommendations by the Inspector General (IG) are discretionary in nature and not mandatory for commanders. Therefore, Commanders have the authority to decide whether to implement IG recommendations or not." No action was taken.

The Petitioner subsequently sought assistance from an independent contract classifier to validate the GS-12 finding as conveyed by Maenell Means particularly because WRAMC did not take any corrective action. Mr. Ronald Barksdale was retained. He was formerly employed as a position classifier by the United States Office of Personnel Management. His evaluation of position #00577, dated May 25, 1999, resulted in a GS-12 classification. With Mr. Barksdale's evaluation, the Petitioner, in January 2001, contacted Colonel Michael Dunn, Commander, North Atlantic Regional Medical Command (NARMC), which was previously referred to as Walter Reed Army Medical Center. (Walter Reed regionalized with other Army medical facilities.) Colonel Dunn in turn forwarded the Petitioner's information to Colonel John H. Nolan III, Center Judge Advocate. Colonel Nolan's response letter to the Petitioner indicated that the classification problem would be turned over to Dian S. Jamison, Director, Civilian Personnel Division, HQS, MEDCOM, Texas. The MEDCOM was *not* the Petitioner's former employer or administrative agency. Colonel Nolan did not explain why WRAMC forwarded the tasking to the MEDCOM. The classification specialist conducting the evaluation was Dorothy Grayson. The Petitioner telephoned Ms. Grayson and requested that, in the event there was a difference of opinion in the classification result, that is Ms.

**4**

Grayson found PD #00577 to be a GS-11 as opposed to a GS-12, if she would also examine the evaluation completed by Mr. Barksdale and identify where the differences were and why her evaluation was more appropriate as opposed to his. Ms. Grayson initially agreed to the request, but subsequently refused. She stated that she would simply report her findings to Dian Jamison. On or about September 13, 2001, Ms. Jamison informed the Petitioner that PD #00577 was evaluated by the MEDCOM as a GS-11 and that the information served as the U.S. Army Medical Command's final response to the inquiry.

The Petitioner took the MEDCOM's evaluation and sent it to Mr. Barksdale. She requested a review of Ms. Grayson's classification analysis and a determination as to which evaluation was accurate, the GS-11 or GS-12. After reviewing Ms. Grayson's work, Mr. Barksdale responded adamantly that his classification evaluation of GS-12 was proper and that Ms. Grayson's review reflecting a GS-11 result was unquestionably flawed. Mr. Barksdale outlined the flaws with specificity.

Extremely upset with the grade evaluation differences for the same position, the Petitioner contacted the Office of Personnel Management. She was ultimately referred to Mr. Paul Katz, formerly the Assistant Director for the Office of Personnel Management. While employed, Mr. Katz designed and managed the government's position classification system covering two million workers. He remains an expert in the position classification field. The Petitioner believed that since Mr. Katz had exceptional credentials that he would be a viable individual to consult with.

Mr. Katz was retained to apply the August 1990 Management Analyst 343 job series position classification standards to the Petitioner's former position description

**5**

#00577 to determine the proper grade of the position.  On March 21, 2006, Mr. Katz published his factor level evaluation as GS-12, a result that was consistent with Maenell Means and Mr. Ronald Barksdale.  The only evaluation to differ, resulting in a GS-11, was completed by Dorothy Grayson, MEDCOM.  The Petitioner continues to believe that Ms. Grayson's evaluation of Position Description #00577, specific to <u>Factor Levels 3 and 5</u>, produced an erroneous result, because applicable job duties contained in the position description may have been inadvertently overlooked.

The Petitioner offers the following in substantiation:

CLASSIFICATION EVALUATION ANALYSIS

The GS-12 factor level evaluation prepared by Maenell Means has been omitted from this document, because the information could not be located at WRAMC.

<u>NOTE</u>:  The classification system uses a "points system" to determine the grade of a position.  Higher points equate to a higher grade determination.

<u>Specific to Factor 3.  GUIDELINES.</u>

Evaluators – Ronald Barksdale and Paul Katz, both independent personnel management and classification consultants, used <u>Level 3-4</u> (<u>450 points</u>) which states, in part:

> From the Administrative Analysis Grade-Evaluation Guide (AAGEG) dated August 1990 - Guidelines consist of general administrative policies and management and organizational theories which require considerable adaptation and/or interpretation for application to issues and problems studied.  At this level, administrative policies and precedent studies provide a  basic outline of the results desired, but do not go into detail as to the methods used to accomplish the project.

**6**

The Management and Program Analysis Series, GS-0343, also dated August 1990, was used.

Mr. Barksdale supported his use of <u>Level 3-4</u> (<u>450 points</u>) by stating:

"<u>Level 3-4</u> is credited for this factor. At this level, guidelines consist of general policies, goals, objectives, regulations, and organizational theories that require "considerable adaptation or interpretation" to situations encountered.

    a. These type of guidelines are similar to those in effect for the subject position where guidance consists of general information on program or study objectives, background data, precedents, and "a variety of management principles, methods, and practices" needed to carry out assignments. The incumbent is expected to use his/her previous experience to adopt established procedures and techniques and to make appropriate modifications or deviations when necessary or desirable, after discussion with the supervisor. Therefore, <u>Level 3-4</u> is substantially met.

    b. The incumbent "will be confronted with complex problems which require the exercise of considerable judgment in making sound managerial determinations and decisions." (Major Duties) of PD #00577)

    c. The incumbent will study "areas which may require new or substantially modified work methods, procedures, systems, etc., because of changes in mission, liquidation, or technological advances. (See paragraph 1 (Major Duties) of PD #00577)

    d. The incumbent is expected "to use his/her previous experience to adopt established procedures and techniques and to make appropriate modifications

**7**

or deviations when necessary (Emphasis added) after discussion and clearance with branch chief." (See paragraph 2 of PD #00577).

e.  The incumbent meets with management officials to explain recommendations for changes in work operations when "the recommendations may represent significant departures from established work practices." (See paragraph 4 of PD #00577).

f.  The above statements clearly demonstrate the need for the incumbent to perform functions for the planning, development, and execution phases of assignments that require the use of considerable judgment in the interpretation and application of policies, theories, and other guidance pertaining to the work. The fact that some of the work is new means that it is not adequately covered by guidelines or established precedent (e.g., studies of changes in management requirements, systems, or technology). For these assignments, the incumbent must rely on experience and training to determine appropriate study methods and analytical techniques, interpret and apply guidance to the various phases of projects, resolve problems and make recommendations to improve economy and effectiveness of operations. This fully meets the intent of Level 3-4 since the incumbent does perform work for new and complex areas that require substantial interpretation and/or modification of existing guidance."

Mr. Katz supported his use of Level 3-4 (450 points) by stating:

"Uses considerable latitude in order to independently adapt guidelines to fit each project."

Dorothy Grayson at the MEDCOM supported her use of <u>Level 3-3</u> (<u>275 points</u>, a lower level) by stating:

"<u>Level 3-4</u> is not met. Although the incumbent has responsibility for establishing, developing or implementing programs that concern the optimum utilization of resources through maximum economy of operation, there is no indication that the nature of guidelines used exceeds <u>Level 3-3</u>. Specifically, the appellant does not make considerable adaptations or interpretations of general administrative policies and management and organizational theories in the work."

In accordance with the AAGEG dated August 1990, Dorothy Grayson's use of <u>Level 3-3</u> for Factor 3 was significantly flawed. Of compelling evidence in support of <u>Level 3-4</u> is the following:

The AAGEG, <u>Level 3-4</u> states in part: "At this level, administrative polices and precedent studies provide a basic outline of the results desired, but do not go into detail as to the methods used to accomplish the project."

Position Description #00577 (Major Duties (paragraph 1) bears a substantial similarity to the above requirement: "Incumbent receives assignments in the form of an outline of the overall purpose and objectives or the study to be made, without specifics as to techniques to be used."

In determining the differences in the aforementioned, the AAGEG states: "<u>precedent studies provide a basic outline</u>," whereas Position Description #00577 states: "<u>incumbent receives assignments in the form of an outline</u>." Clearly, the <u>position description did not restrict its requirements to precedent studies as the basis for the outline</u>. <u>The basis could have originated from precedent studies and/or other sources</u>.

Position Description #00577 incorporated precedent studies as follows: (Major Duties, page 1): "Incumbent plans and accomplishes complete projects of studies requiring the independent adaptation of a general fund of background data and information and the interpretation and use of precedents." Given the content of the position description, the incumbent was expected to use precedents in accomplishing studies.

Further examination of the AAGEG reveals that the basic difference between Levels 3-3 and 3-4 is that Level 3-3 pertains to "available and current guidelines;" whereas, Level 3-4 specifically addresses the requirement for considerable adaptation and/or interpretation, because guidelines are not clearly defined. Mr. Barksdale made a compelling argument with his very thorough and documented analysis of Factor 3, Level 3-4. He explained that PD #00577 took into consideration that some of the work was new because of mission changes and/or technological advances (See paragraph 1 (Major Duties) of PD #00577); therefore, it was not adequately covered by guidelines or established precedents. Since PD #00577 required the incumbent to perform work that was new and complex, substantial interpretation and/or modification of existing guidance was necessary.

Because Position Description #00577 meets the requirements outlined by Level 3-4, it is the appropriate level to be assigned.

Specific to Factor 5. SCOPE AND EFFECT:

Evaluators – Ronald Barksdale and Paul Katz, both independent personnel management and classification consultants, used Level 5-4 (225 points) which states, in part:

From the Administrative Analysis Grade-Evaluation Guide (AAGEG) dated August 1990 - Work contributes to the improvement of productivity, effectiveness, and efficiency in program operations and/or administrative support activities at different echelons and/or geographical locations within the organization. Work affects the plans, goals, and effectiveness of missions and programs at these various echelons or locations.

Mr. Barksdale supported his use of Level 5-4 (225 points) by stating:

   a. "Level 5-4 is credited for this factor. At this level, the purpose of work is to analyze and resolve problems of effectiveness and efficiency when this work may affect operations or activities at different echelons or geographical locations within the organization, and/or the administrative work done in other agencies (e.g., reporting, data collection, official correspondence).

   b. This scope and effect is comparable to the subject position since the incumbent performs work necessary to coordinate agency fact-finding and improve management systems in WRAMC. Frequent coordinative action is required with personnel in a variety of medical and administrative fields.

   c. The MEDCOM argument for Level 5-3 (150 points) under Factor 5 – Scope and Effect also seems to miss or *ignore* evidence in the PD that supports higher credit. More specifically, the MEDCOM states that Level 5-3 is most appropriate for this factor since the effect of the incumbent's work is limited to WRAMC only "and not different echelons and/or geographical locations within the organization." From this statement and the requirement as stated in the AAGEG, I assume the MEDCOM means that this credit is inappropriate

since the WRAMC does not have organizational echelons or different geographical locations. If so, this is incorrect since the WRAMC has components that are located in different locations, (e.g., the Forest Glen Annex in Silver Spring, Maryland, and medical clinics at the Pentagon, Fort Belvoir, Arlington Hall, Aberdeen, and other locations).

d.  More importantly, however, is the fact that the PD establishes a requirement in the position for considering "the interests of other organizations" within and outside of WRAMC in performing work. This work, according to the PD, entails "frequent coordinative action with personnel in a variety of medical and administrative fields…requiring understanding of the responsibilities of other activities involved." Presumably, this means the interaction that is necessary with parent commands, owners of systems or technology affecting WRAMC studies, and various Army organizations having an interest in WRAMC activities or clearance requirement.

e.  Another reference in the PD suggests that higher credit than 5-3 is appropriate. Paragraph 4, 2nd sentence, states, "<u>analyst contacts management officials of the agencies studied to explain the recommendations for changes in work operations and the necessity for the key actions proposed</u>." This appears to be an external responsibility that probably extends beyond WRAMC since the reference is to "agencies.""

Mr. Katz supported his use of <u>Level 5-4</u> (<u>225 points</u>) by stating:

"Recommendations directly affected nagging, long term, interrelated problems at "multiple locations.""

**12**

Dorothy Grayson at the MEDCOM supported her use of Level 5-3 (150 points, a lower level) by stating:

> "Since the effect of the work is limited to contributing to operations/activities at WRAMC only (Level 5-3) and NOT different echelons and/or geographical locations within the organization (Level 5-4), Level 5-3 (150 points) is assigned."

The Petitioner contends that Dorothy Grayson's use of Level 5-3 for Factor 5 was also flawed. Note the following:

Reference to "using agencies" and "agencies studied," PD #00577 was not limited to the internal WRAMC installation nor administrative support activities within WRAMC but clearly extended to other agencies in other geographical locations that were part of the WRAMC organization. WRAMC had Army Health Clinics in other geographical locations, i.e., Rader Clinic (Virginia), Pentagon (Virginia), Fort Belvoir (Virginia), Edgewood Arsenal (Maryland), Arlington Hall (Virginia), Fort Detrick (Maryland), Cameron Station (Virginia) and Aberdeen Proving Grounds (Maryland).

The Petitioner's duties in position #00577 also had an impact upon decision-making policies at the Department of Defense Health Affairs (DODHA), an agency clearly outside of the WRAMC organization.

INFORMATIONAL PURPOSES ONLY: The Petitioner complied with the requirements of Position Description #00577 and the AAGEG, Level 5-4, when she physically conducted management studies, improvement projects, and training at Walter Reed's Army Health Clinics located in other geographical areas. The Petitioner also performed studies and collected data from Walter Reed's Forest Glen Annex located in Silver Spring, Maryland.

**13**

Forest Glen was located several miles from Walter Reed's main installation in Washington, D. C.

### THE ADMINISTRATIVE ERROR CAUSED BY THE WALTER REED CIVILIAN PERSONNEL OFFICE WAS INJURIOUS TO THE PETITIONER

And

### VIOLATED LAWS, RULES, AND REGULATIONS

1. From the time new classification standards dated <u>August 1990</u> were implemented by the Civilian Personnel Office, (on or about the latter part of calendar year 1990 or the early part of 1991) to January 1994, the Petitioner occupied Position Description #00577 as a GS-11. Her position, having been administratively and erroneously omitted from application of newly revised classification standards, <u>was last officially evaluated by WRAMC in July 1975 using standards dated February 1972</u>. The fact that the Civilian Personnel Office, WRAMC, had not reviewed the Petitioner's position description for an inordinate number of years made it extremely important that the August 1990 standards were applied to ensure an accurate grade determination. Application of the classification standards from the August 1990 Administrative Analysis Grade-Evaluation Guide (AAGEG) were <u>mandatory</u> and <u>nondiscretionary</u>. The agency did not have the authority to pick and choose the Management Analyst positions to receive application of the standards. All Management Analyst positions in the 343 job series were to have the August 1990 standards officially applied.

The Petitioner maintains that her former employer violated the Classification Act of 1949, 5 U.S.C. 1094, and Comptroller General Decisions #B-134820 (37 Comp. Gen. 492), #B-165307, 1968, #B-196638 dated July 10, 1980, Earl H. Carter, as well as

**14**

committing a Prohibited Personnel Practice concerning Merit System principles 5 U.S.C. Section 2301. Section 2302(b)(12) prohibits an official with personnel action authority from taking or <u>failing</u> to take a personnel action if doing so results in the violation of any law, rule, or regulation that implements, or directly concerns, a Federal Merit System principle 5 U.S.C. Section 2301.

AUTHORITY:

Comptroller General Decision, #B-134820 (37 Comp. Gen. 492), states:

"When the Civil Service Commission prepares and publishes revised standards for positions as required under section 401 of the Classification Act of 1949, 5 U.S.C. 1094, it is <u>mandatory that the **administrative agency** take action within a reasonable time to place the existing positions in the proper classes and grades prescribed in the revised standards and to pay the scheduled salaries of the grades,</u> not withstanding that the current appropriation estimates did not include the increased cost resulting from the application of the new standards. The holding in 30 Comp. Gen. 156 that departmental actions under section 502 of the Classification Act of 1949; 5 U.S.C. 1102, shall form the basis for payment of compensation and that such changes become effective on the date administrative action is taken to finally allocate or reallocate the positions or such later date, as might be administratively fixed, is amplified to the extent that such later date as might be administratively fixed must be within a reasonable time."

2. As stated in the aforementioned Authority, a time element is attached to application of newly revised classification standards, i. e., within a "reasonable time." The Petitioner subsequently inquired with the Office of Personnel Management as to what timeframe constituted a "reasonable time." The Petitioner was told that six (6) months was

**15**

considered "reasonable" and could be expected. The Petitioner then asked if "years to apply the classification standard" was acceptable, and she was told *"no."*

3.    The Petitioner maintains that she was entitled to the appropriate monetary compensation had PD #00577 been upgraded to the GS-12 level, as it appears it should have been. She further maintains that because the WRAMC Civilian Personnel Office erred in omitting her position from review and application of the August 1990 343 series job standards, that she should not be deprived of a retroactive and just compensation.

AUTHORITY:

a. Comptroller General Decision #B-165307, 1968, states:

"When a position is reclassified to a higher grade with no changes in duties and responsibilities (e.g., by application of new classification standards), the incumbent must be promoted within a reasonable time after that date if otherwise qualified. The Comptroller General has upheld retroactive promotion of an employee wrongly denied such entitlement."

b. Comptroller General Decision #B-196638 dated July 10, 1980, Earl H. Carter – Claim for Back Pay, which states:

"As a general rule an administrative change in salary may not be retroactively effective in the absence of a statute so providing. 26 Comp. Gen. 706 (1947). However, we have permitted a retroactive personnel action where clerical or administrative errors occurred that prevented a personnel action from taking effect as originally intended, deprived an employee of a right granted by statute or regulation, or would result in failure to carry out a nondiscretionary administrative regulation or policy if not adjusted retroactively."

4. Based upon the classification evaluations of position #00577 conducted by Maenell Means, Ronald Barksdale, and Paul Katz, all of which equated to a grade level of GS-12, the Petitioner contends that her former employer violated a Merit Systems Principal – Equal Pay for Work of Equal Value, Section 2301(b)(3), Title 5, United States Code.

The Petitioner contends that the duties of her position were that of a GS-12 and that she was performing those duties, but compensated at the GS-11 level. Since the other Management Analysts performing similar duties to the Petitioner's were being compensated at the GS-12 level, the Petitioner was deprived of proper compensation for her work. She held position #00577 during the time the August 1990 standards were field received and implemented by her former agency until the latter part of January 1994, a period of approximately 3+ years. The Petitioner was subsequently transferred into another GS-11 position (#40390); however, that created a problematic situation since the proper classification standards were not applied to the Petitioner's position #00577 prior to her transfer. Had the standards been properly and timely applied, the Petitioner maintains that she would have been a GS-12 in position #00577 and could not have been downgraded to a GS-11 in position #40390 without documented justification. She further maintains that such action probably would not have occurred in view of her Exceptional Performance appraisals. Application of the new standards to position #00577 was critical.

5. In September, 2001, the Petitioner received a letter from Dian Jamison. The letter stated, "Our determination, outlined in the enclosed Evaluation Statement, is that application of the new Guide results in a grade of GS-11." Ms. Jamison's letter went on to say, "You told Ms. Dorothy Grayson, on my staff, that you were not performing the

**17**

duties outlined in PD #00577, at the time the new Guide was issued and being applied. You were performing duties specifically related to the Medical Expense Performance Reporting System..." FOR THE RECORD, the Petitioner informed Ms. Grayson that she was performing work related to the Medical Expense and Performance Reporting System (MEPRS) in addition to those duties outlined in PD #00577. Additionally, just to clarify, Ms. Jamison's reference to "the new Guide was issued and being applied," relates to a subsequent position #40390, and not position #00577.

6. Extremely damaging to the Petitioner was the fact that WRAMC never conducted an official classification evaluation of position #00577 under the auspices of the Classification Act of 1949 and while the Petitioner was still an employee. Had WRAMC applied the new standards timely and concluded a grade result the Petitioner believed erroneous, the Petitioner could then have filed an appeal with the Office of Personnel Management, Washington, D. C. to have the grade reexamined.

When the MEDCOM Civilian Personnel Office subsequently accepted the tasking, at Walter Reed's request, to conduct a classification review and completed such in September 2001; the Petitioner was no longer employed by WRAMC. Her employment terminated in calendar year 1996 when she was removed for excessive absence due to a job-related illness. The MEDCOM was not the Petitioner's administrative agency. The Classification Act of 1949 specifically states that the employee's administrative agency will conduct a classification review and apply the standards.

The Petitioner contends that her former employer's timeliness in conducting the classification evaluation of position #00577 against the newly revised standards was a

significant factor in preserving the Petitioner's appeal rights to the OPM. Because Walter Reed did not take corrective action following the Inspector General investigation, while the Petitioner was still an employee in position #00577, she subsequently lost any appeal rights she would have had.

7. Lastly, the Petitioner has lost the difference in monetary compensation between the GS-11 and GS-12 for <u>retirement</u> purposes. Based upon the current situation, her future retirement annuity would be paid at a lower rate of pay due to the administrative clerical error by the WRAMC Civilian Personnel Office.

### THE PETITIONER CONTACTED SEVERAL AGENCIES

### SEEKING AN INVESTIGATION

The Petitioner unrelentingly contacted numerous agencies seeking an investigation into Walter Reed's failure to apply the August 1990 classification standards to her position #00577. Even though the Petitioner alleged that her former agency violated the law by their failure to apply the classification standards on or about August 1990, she encountered great difficulties in obtaining any type of cooperative investigative proceeding in her case particularly after the MEDCOM communicated that position #00577 was evaluated as a GS-11. The MEDCOM's decision was taken verbatim and without consideration for error. A record of the Petitioner's efforts follow. The chronology may not be all-inclusive:

<u>November 13, 1995</u> - <u>Letter to the Office of the Inspector General, MEDCOM</u>.

The Petitioner requested an Inspector General investigation from Walter Reed's higher headquarters (MEDCOM) relevant to several complaints she had against WRAMC management. The written request was forwarded to: Headquarters, Department of the

**19**

Army, Office of the Inspector General, Assistance Division, ATTN: SAIG-AC (LTC Mark O. Hehmeyer), 1700 Army Pentagon, Washington, D. C. 20310-1700.

May 7, 1996 - Pattie Campbell, Inspector General's Office, MEDCOM, Fort Sam Houston, TX, flew into Washington, D. C. to conduct an on-site investigation at WRAMC. She interviewed Civilian Personnel representatives specifically to determine what events took place with the Petitioner's position description (#00577) and an upgrade of all positions in the Petitioner's branch, except for the Petitioner's job.

August 16, 1996 - A Report of Inquiry (ROI) was completed by the Inspector General's Office. It stated, in part: "The Civilian Personnel Office at WRAMC received new classification standards from the Office of Personnel Management (OPM) for the Management Analyst (343) job series. All 343 job series positions were to be audited, to comply with the new standards. The audit could have been as simple as a review of the job description, to determine whether it complied with the standards, or as complex as a complete position audit, to determine compliance with the new standards. For whatever reason, Ms. Minehan's position was not reviewed, even though her job description was written in 1975." According to personnel interviewed by Pattie Campbell, Office of the Inspector General, on or about May 7, 1996, the Civilian Personnel Office knew that the Petitioner's position description had not been reviewed for compliance with the new classification standards (August 1990), and they did nothing to rectify the matter. The Petitioner was still assigned as an employee but was not cognizant of any of this information until sometime later when she received a copy of the ROI from Doreen Haney, her attorney.

o/a March 1999 - Receipt of the ROI from the Petitioner's attorney revealed that PD #00577 evaluated as a GS-12 when the position description was applied against the newly revised classification standards dated August 1990. Maenell Means, an experienced classification specialist in the Walter Reed Civilian Personnel Office, unofficially completed the evaluation. When the Personnel Office refused to do anything about the problem, the Petitioner believed that it was important to locate an independent contract classification specialist to substantiate Ms. Means' finding of GS-12 for position #00577.

May 25, 1999 - Mr. Ronald Barksdale was contacted to evaluate Position Description #00577. He was an independent contract classification specialist who formerly worked at the Civil Service Commission (subsequently called the Office of Personnel Management. He reviewed PD #00577 and found that the position graded at the GS-12 level using the August 1990 newly revised classification standards from the Office of Personnel Management.

May 9, 2000 - After filing a complaint, containing numerous issues, with the United States Office of Special Counsel (OSC), the Petitioner received a letter. In response to her classification issue, the OSC responded as follows:

EXTRACT:

"Much of your complaint concerns the issue of the proper classification of your position. OSC considers allegations of improper classification as possible violations of 5 U.S.C. Section 2302(b)(12). Section 2302(b)(12) prohibits an official with personnel action authority from taking or failing to take a personnel action if doing so results in the violation of any law, rule, or regulation that implements, or directly concerns, a merit

system principle. Improper classification can be considered violations of law that implement or directly concern merit system principles. See *Towers v. Horner*, 791 F.2d 1244 (5th Cir. 1986): *Barnhart v. Devine*, 771 F.2d 1515 (D.C. Cir. 1985). <u>It is the policy of this Office, however, not to investigate allegations of classification problems until an employee has first pursued the classification appeals procedures available at her agency and at the Office of Personnel Management (OPM).</u> The available information does not suggest that you have filed classification appeals with either the Army or OPM. Consequently, we have no basis for further inquiry into your allegations that you were not properly classified"

PETITIONER'S COMMENT:

The Petitioner had explained in her complaint to the OSC that she first learned of the classification problem from the Office of the Inspector General, MEDCOM, Fort Sam Houston, Texas, and that she was no longer an employee at the time. The representative from the OSC merely indicated that it was their policy not to do an investigation until appeals procedures were followed. As a former employee, the Petitioner was unable to use the Appeals system, and she could not have anyway, because Walter Reed never took an action she could appeal. As a result, she continued to pursue her complaint with other organizations.

<u>June 29, 2000</u> - <u>Letter to Assistant Secretary of the Army, Manpower, and Reserve Affairs, ATTN: Beth Helmer.</u> The Petitioner sent a letter outlining the problem with her former position and classification.

<u>August 15, 2000</u> - <u>Letter to the Assistant Secretary of the Army for Financial Management and Comptroller</u>. The Petitioner sent a letter outlining the problem with her former position and classification.

<u>October 5, 2000</u> - The Petitioner received a response from Dian S. Jamison, Director, Civilian Personnel Division, HQS, MEDCOM. Ms. Jamison stated in part, "I am responding to your letters to the Office of the Assistant Secretary of the Army for Financial Management and Comptroller, dated August 15, 2000, and to the Assistant Secretary of the Army, Manpower and Reserve Affairs, dated June 29, 2000. You continue to allege that your position was improperly classified...and that a Report of Investigation by the U.S. Army Medical Command (MEDCOM) Office of the Inspector General (IG) indicates that your position should have been classified at the GS-343-12 level...<u>WRAMC maintains that your previous position was not improperly classified</u>...<u>The WRAMC Civilian Personnel Advisory Center indicates that the GS-343 standard was applied to your revised position in 1993. As a result, it replaced your previous position description (No. 00577) with a new position description (No. 40390) to accurately reflect your revised duties in December 1993. Based upon consistent application of the classification standards, your new position was appropriately classified at the GS-343-11 level</u>...We will not revisit the classification of the position...as no possible benefit would come to you as a result of our doing so."

<u>PETITIONER'S COMMENTS</u>:

1. The Petitioner contends that Dian Jamison addressed Position Description #40390 as accurately evaluated at the GS-11 level effective December 1993. Position #40390 was the Petitioner's previous and last position held; however, the Petitioner's complaint

predates that position number and effective date. The Petitioner's complaint focuses upon an earlier time frame, August 1990 and PD #00577. For clarification purposes, note the following:

## THE PLOY

The Petitioner maintains that WRAMC had been sloppy in their initial procedures to have missed position #00577 when applying the newly revised classification standards (August 1990/1991). When Civilian Personnel officials subsequently learned of their failure to apply the standards to position #00577, a significant amount of time had already passed (on or about December 1993).

Rather than rectifying the problem by going back and applying the standards correctly, a decision was made to abolish position #00577 and create another position description #40390. The new position #40390, as stated above by Ms. Jamison, was a "revised position," but the intent in establishing that position was to remove duties that the Petitioner previously performed in position #00577 so in fact position #40390 would grade out at a GS-11 level when the newly revised standards were applied, and that is exactly what happened. Subsequently, the Petitioner was involuntarily transferred into position #40390 effective January 24, 1994.

## THE DAMAGE

A problematic situation occurred because the August 1990 newly revised classification standards were not applied to the Petitioner's position #00577 prior to her involuntary transfer into position #40390.

The Civilian Personnel Office, WRAMC, committed several violations of law by circumventing the Classification Act of 1949, and Comptroller General Decisions #B-

134820 (37 Comp. Gen. 492), #B-165307, 1968, #B-196638 dated July 10, 1980, Earl H. Carter, as well as a Prohibited Personnel Practice concerning Merit System principles Title 5 U.S.C. Section 2301.

2. The Petitioner also disputes Ms. Jamison's comment, "...no possible benefit would come to you ..." The Petitioner contends that a significant benefit would have resulted from proper classification of her former position #00577, i.e., a substantial increase to her previous salary and ultimately Civil Service retirement.

October 24, 2000 - The Petitioner received a response from the Assistant Secretary of the Army, Manpower, and Reserve Affairs (Sarah C. Graham). Ms. Graham stated, "This correspondence is in response to your inquiry to the Office of the Assistant Secretary of the Army for Financial Management and Comptroller, dated August 15, 2000. We have reviewed the documentation you forwarded with your inquiry. We are also in receipt of the response provided by Headquarters, U.S. Army Medical Command (MEDCOM). This is to advise that after reviewing all documentation, we concur with MEDCOM's assessment that your position description, based on the appropriate application of classification standards, was properly classified at the GS-343-11 level. Accordingly, no further action or response is required."

PETITIONER'S COMMENT:

The Petitioner contends that the aforementioned response failed to identify which position description number Ms. Graham was referring to. She may have been making reference to PD #40390 even though the Petitioner's complaint was *only* applicable to PD #00577. The MEDCOM had also incorporated PD #40390 into their response. (See above comments at October 5, 2000) Reference the above letter, the Petitioner was not

provided with a copy of the documents submitted to Ms. Graham, Manpower and Reserve Affairs.

October 30, 2000 - After contacting several officials at WRAMC, WRAMC forwarded the Petitioner's position description to the MEDCOM Personnel Office.

October 30, 2000 - Letter to Assistant Secretary of the Army, Manpower and Reserve Affairs, ATTN: Beth Helmer.  The Petitioner made reference to her letter of June 29, 2000, also addressed to the same agency.  She indicated that she was writing again, because she believed that Dian Jamison, MEDCOM, was not the appropriate individual to evaluate the Petitioner's complaint with her position description.  She stated, "Although I sent sufficient documentation to substantiate my issue, she (meaning Dian Jamison) appears to have accepted her agency's response verbatim...I need to secure the assistance of an individual who is willing to research the issue and evaluate the results based upon documented evidence."

October 30, 2000 - Letter to Department of the Army, Headquarters, U.S. Army Medical Command (MEDCOM), Texas, ATTN: Dian S. Jamison.  The Petitioner clarified that she was seeking a solution to her former agency's failure to apply newly revised classification standards dated August 1990 to her former position #00577 and that her complaint was not applicable to a subsequent position #40390.  She further stated, "I've already provided several documents to substantiate my position.  I find it puzzling that your office appears to have disregarded the information I previously sent."

October 31, 2000 - Letter to Assistant Director for Oversight, United States Office of Personnel Management, Office of Merit Systems Oversight and Effectiveness.  The Petitioner outlined her former agency's failure to apply new classification standards dated

August 1990 to position #00577 and cited her former agency for violating a Merit System Principle –Equal Pay for Work of Equal Value.

January 6, 2001 - Letter to Ronald Barksdale. A telephonic request was first made and then a follow-up letter asking that Mr. Barksdale reexamine Position Description #00577 to ensure that the GS-12 classification result he reached in May 1999 was accurate.

January 10, 2001 - The Petitioner received a response to her letter to the Office of Merit Systems Oversight and Effectiveness, OPM. That letter stated, in part: "…OPM does not typically investigate individual complaints. Our oversight of agency human resources programs seeks to ensure that these programs are operating in accordance with Merit System Principles, such as equal pay for work of equal value. Therefore, we will maintain the information you have provided and consider it in our identification and scheduling of installations for oversight review… If you believe a prohibited personnel practice was committed through violation of a merit system principle, you may contact the Office of the Special Counsel (OSC)."

January 26, 2001 - Letter to Commander Michael Dunn, Walter Reed AMC. The Petitioner contacted Commander Michael Dunn to make a claim for an administrative action to correct a Civilian Personnel error applicable to her position classification as a result of new OPM standards. Receipt of the claim was acknowledged by Captain S. Moss.

May 22, 2001 - Colonel John H. Nolan, III, Center Judge Advocate, responded for Commander Michael Dunn. His letter indicated that Dian S. Jamison, MEDCOM, carefully reviewed the classification matter and informed the Petitioner that the GS-343

standard was applied to a subsequent position held by the Petitioner and that the position grade of GS-11 was correct.

PETITIONER'S COMMENT:

The subsequent position number discussed above is #40390, not #00577. The Petitioner's complaint is *only* applicable to PD #00577.

August 6, 2001 - Facsimile to Dorothy Grayson, MEDCOM, Texas. The Petitioner documented her telephone conversation with Dorothy Grayson, which indicated that Ms. Grayson agreed to look at the classification evaluation completed by Ronald Barksdale if her evaluation result differed from his. Ms. Grayson subsequently changed her mind and would not accommodate the Petitioner's request.

September 13, 2001 - The Petitioner received a letter from Dian S. Jamison, MEDCOM. She responded for the MEDCOM and stated in part, "This will serve as the U.S. Army Medical Command's final response to your inquiry of October 30, 2000, concerning position description number 00577, Management Analyst, GS-343-11, to which you were assigned...We are not able to support your claim that application of a new grading standard issued in August of 1990 (i.e., the U.S. Office of Personnel Management Position Classification Standard for the Administrative Analysis Grade Evaluation Guide) would have resulted in an upgrade to GS-12. Our determination, outlined in the enclosed Evaluation Statement, is that application of the new Guide results in a grade of GS-11...You allege that the Walter Reed Civilian Personnel Office (CPO) erred in its responsibilities in applying the Guide during the 1990-1991 timeframe." Ms. Jamison also stated, "You told Ms. Dorothy Grayson, of my staff, that you were not performing

the duties outlined in PD #00577, at the time the new Guide was issued and being applied."

PETITIONER'S COMMENT:

The Petitioner told Dorothy Grayson that she *was* performing duties under PD #00577 <u>as well as additional duties</u> applicable to the Medical Expense and Performance Reporting System. Also, the Petitioner did not allege that the WRAMC Personnel Office erred in applying the Guide. The Petitioner specifically alleged that WRAMC did *not* apply the Guide at all to position #00577.

October 22, 2001 - Mr. Barksdale completed another review of PD #00577 at the Petitioner's request to be absolutely certain that his evaluation and GS-12 grade level result was appropriate. Again, the result was GS-12. Mr. Barksdale also reviewed the evaluation completed by the MEDCOM and found credible errors made in their GS-11 result. He documented the errors with specificity for the Petitioner.

December 18, 2001 - Letter to Office of Personnel Management. The Petitioner sent a letter, subj: Complaint and Administrative Claim for Compensation Commencing on or about August 1990. She presented background information and supporting Comptroller General (CG) Decisions. Of significant importance, she included Comptroller General Decisions (#B-134820 (37 Comp. Gen. 492, and #B-196638 dated July 10, 1980, Earl H. Carter) for consideration:

September 6, 2002 - A response letter from Deborah Y. McKissick, OPM stated in part, "The claimant and the agency agree that she was assigned to position description (PD) number 00577 through December 1993. WRAMC did not take any actions after conducting an official review of the claimant's position in December 1993. The agency's

letter of September 13, 2001, provides the final classification determination made by the Medical Command (MEDCOM), the facility's higher headquarters, for the work described in PD number 00577...MEDCOM evaluated the work for PD number 00577 as Management Analyst, GS-0343-11... The Back Pay Act, as 5 U.S.C. Sec. 5596(b), provides for back pay when the appropriate authority finds that an employee was affected by an unjustified or unwarranted personnel action that resulted in the withdrawal or reduction of all or part of the employee's pay. However, in specifying that subsection (b) does not apply to "any" reclassification action, section 5596(b)(3) excludes reclassification actions from coverage under the Back Pay Act ...OPM does not conduct investigations or adversary hearings in adjudicating claims, but relies on the written record presented by the parties...The agency reported that the claimant was not appointed to a higher-graded position. When the record presents an irreconcilable factual dispute, the burden of proof is on the claimant to establish the liability of the United States...The claimant's position was never upgraded to the GS-12 grade level. Accordingly, the claim is denied."

PETITIONER'S COMMENT:

WRAMC, Petitioner's former administrative agency, did *not* examine Petitioner's position #00577 as required by the Classification Act of 1949 and by Comptroller General Decisions. Furthermore, as described earlier by this document, Comptroller General Decisions have permitted exceptions to the Back Pay Act applicable to retroactive salary adjustments.

April 29, 2003 - Letter to the United States Office of Special Counsel. The Petitioner wrote a letter to the OSC, ATTN: Pernell Caple, and explained "Based upon the response

from OSC, I again contacted OPM. OPM was unable to adjudicate my complaint due to lack of regulatory authority. Clearly I'm unable to pursue a classification appeal in accordance with OSC's policy, because I'm no longer an employee. I did; however, appropriately pursue all avenues conveyed to me by the OSC."

May 7, 2003 - The Petitioner received a response from the OSC. It stated, "We have reviewed the information you submitted, and have determined that you have not presented any additional evidence that would lead us to change our decision to close the file in this matter. Accordingly, your request for reconsideration is denied and there is no further appeal available to you within the Office of Special Counsel." (OSC File # MA-03-1124)

July 8, 2003 - Letter to the United States Merit Systems Protection Board (MSPB).

The Petitioner advised the MSPB representative of her claim and the response she received from the United States Office of Special Counsel (OSC) which stated: "Improper classification can be considered violations of law that implement or directly concern merit system principles. See *Towers v. Horner*, 791 F.2d 1244 (5th Cir. 1986)...It is the policy of this Office; however, not to investigate allegations of classification problems until an employee has first pursued the classification appeals procedures available at her agency and at the Office of Personnel Management (OPM)."

The Petitioner explained, "As a former employee, I was unable to file a classification appeal and in fact I could not have filed one anyway, as OPM advised me that a classification appeal is literally the result of something that has already been done by the agency. That was not case with my complaint. My complaint focuses on a lack of appropriate action by the agency."

The Petitioner further advised the MSPB that she was told by an OSC individual that the OSC has a weeding out policy, that is complaints appear valid, but there are an inordinate number of complaints, so the OSC finds ways to reject them. The Petitioner contends her complaint was among those weeded out. The MSPB representative informed the Petitioner that the agency could not issue advisory opinions nor did it have investigative authority. Investigative authority remains with the United States Office of Special Counsel.

November 29, 2003 - Letter to Congressman Chris Van Hollen, ATTN: Marcus Jackson.
The Petitioner sent a very lengthy document to the Congressman and requested his assistance, because the Federal agencies she dealt with, the Office of Personnel Management, the United States Office of Special Counsel, and the Merit Systems Protection Board, were all created by Congress. The Petitioner saw a flaw in the system of all three agencies, because none of them would address her classification problem.

June 18, 2004 - The Petitioner received a copy of a letter addressed to Congressman Chris Van Hollen. In that letter, Jo Ann Robertson, Director, Civilian Personnel Division, MEDCOM, Texas, stated, "This letter is our final response to your inquiry of March 25, 2004…We reviewed Ms. Minehan's classification issue and concluded no administrative error occurred. Nor do we believe the position description in question would have been evaluated at the GS-12 level."

August 11, 2004 - Letter to Congressman Chris Van Hollen, ATTN: Marcus Jackson.
The Petitioner provided documents to Mr. Jackson that he specifically requested. Mr. Jackson agreed that a meeting with WRAMC officials was necessary to resolve the Petitioner's problem. The Congressman's office also contacted WRAMC.

<u>June 21, 2005</u>  - <u>Letter to Congressman Chris Van Hollen, ATTN: Marcus Jackson and Michelle Davy</u>.

The Petitioner renewed communications with Mr. Jackson. She had previously been involved with a family medical problem that had consumed her time. Her letter to the Congressman was very lengthy as she detailed actions previously taken by his office as well as the current situation. The Petitioner completed and signed a Privacy Release so further action could be taken by the Congressman's office.

<u>October 25, 2005</u> - The Petitioner met with Joan Kleinman and Sumi (last name unknown), representatives from Congressman Chris Van Hollen's office. At the end of the meeting, Ms. Kleinman requested specific details as to what the Petitioner wanted accomplished by the Congressman's office. The Petitioner stated that she would put the information in writing. A telephonic discussion also took place on December 5, 2005.

<u>January 18, 2006</u> - <u>Letter to Congressman Chris Van Hollen, ATTN: Joan D. Kleinman</u>.

The Petitioner advised that she had taken action to secure another classification evaluation for PD #00577, this time from a former OPM employee who was actually the former Assistant Director for the Office of Personnel Management.

<u>March 21, 2006</u> - The Petitioner received a classification evaluation for PD #00577 from Mr. Paul Katz, formerly the Assistant Director for the Office of Personnel Management. Mr. Katz specialized in Personnel Management and position classification. He evaluated the Petitioner's former position #00577 as a <u>GS-12</u>. It appeared to the Petitioner that the independent and unbiased contract classification specialists (Barksdale and Katz) evaluated her position as a <u>GS-12</u>, to include a former classification specialist (Maenell Means) at the Walter Reed Civilian Personnel Office. Only the MEDCOM evaluated her

position as a <u>GS-11</u>. The MEDCOM refused to acknowledge that an error may have been made when they conducted a singular review of position #00577.

<u>May 27, 2006</u> - <u>Inspector General (IG) Complaint</u>. The Petitioner filed a complaint at the North Atlantic Regional Medical Command (NARMC), formerly Walter Reed Army Medical Center. She copied the Office of the Inspector General, MEDCOM, Fort Sam Houston, Texas. The Petitioner reiterated her classification evaluation issue.

<u>June 20, 2006</u> - The Petitioner received a response from Congressman Chris Van Hollen. His letter indicated, "I have received your recent correspondence requesting a meeting with representatives from Walter Reed Army Medical Center and have contacted my Congressional Liaison with that request. As soon as I receive a response, I will be back in touch with you."

<u>June 27, 2006</u> - The Petitioner received a response from NARMC. She was advised that her complaint was untimely for the Inspector General's Office and that it was not IG appropriate where there were other avenues of redress.

<u>July 3, 2006</u> - <u>Letter to the Inspector General's Office, NARMC</u>. The Petitioner clarified her original letter to the Office of the Inspector General and attached a lengthy list of other organizations she approached for assistance and failed to receive any help.

<u>September 12, 2006</u> - The Petitioner received a response from the IG, NARMC. The Office of the Inspector General would not re-open the issue on a case completed by their higher headquarters (MEDCOM).

October 10, 2006 - Letter to the Office of the Inspector General, MEDCOM, Texas.
The Petitioner advised that she had not received any response regarding her complaint from their office and that she had new information from Mr. Paul Katz. No response received.

February 20, 2007 - Letter to Dorothy Grayson, Classification Specialist, MEDCOM, Texas, and Jo Ann Robertson, Director, Civilian Personnel, MEDCOM, Texas.
The Petitioner requested a reexamination of the classification evaluated completed by Dorothy Grayson in light of new evidence from Mr. Paul Katz which validated position #00577 as a GS-12.

March 5, 2007 - Letter to LTG Kevin Kiley, Commander, MEDCOM. The Petitioner sent a letter to General Kiley asking for support in getting position #00577 reexamined by the Civilian Personnel Office, MEDCOM. No response received.

April 5, 2007 - Letter to Mr. Michael Smith, Assistant Executive Officer, Office of the Surgeon General (OTSG), and to Major General Gale Pollock, OTSG. After speaking telephonically with Mr. Smith, the Petitioner followed-up with a letter reiterating the conversation. Mr. Smith agreed to try and rectify the problem with the classification issue. The Petitioner indicated that her letter was also addressed to Major General Pollock if Mr. Smith was unsuccessful in resolving the problem.

April 11, 2007 - Mr. Smith requested a copy of the documents received from the MEDCOM Personnel Office on April 11, 2007. The Petitioner outlined what she viewed to be a problem with the MEDCOM's response. The documents were faxed to Mr. Smith.

<u>May 11, 2007</u> - The Petitioner telephonically spoke with Mr. Smith. His entire demeanor had drastically changed to a very nasty tone. He said that the only thing he agreed to do was to ensure that the Petitioner received a response from the Personnel Office. That was inaccurate. He further indicated that his office would not respond, in writing, to the Petitioner's letters. The Petitioner asked if her letters were turned over to General Pollock, and she was told they would not be. She then asked for Mr. Smith's supervisor who was Colonel Davies. The Petitioner promptly called Colonel Davies' office and left a message. He has never returned the Petitioner's phone call.

<u>May 21, 2007</u> - <u>Letter to Major General Schoomaker, Commander, Walter Reed AMC, Washington, D. C.</u> The Petitioner felt it necessary to enlighten the new commander of the problem she had at WRAMC and to ask for his support in resolving the classification matter. The Petitioner spoke with Debbie Jones, Commander's office, on May 24, 2007. She was told that her letter was received by General Schoomaker.

<u>May 31, 2007</u> - The Petitioner spoke with Sgt. Kinley, General Pollock's office, OTSG, to ask that her letters to General Pollock be retrieved from Mr. Michael Smith so that General Pollock is aware of what is going on. Sgt. Kinley said that he would request the letters.

<u>July 3, 2007</u> - <u>Letter to Major General Schoomaker, Commander, Walter Reed AMC, Washington, D. C.</u> A reminder letter was sent, because there was no response to Petitioner's letter of May 21, 2007.

<u>July 18, 2007</u> - The Petitioner received a response from Walter Reed. The letter was specifically from the Office of the Center Judge Advocate, David W. Claypool, Lead Attorney Advisor. Mr. Claypool reaffirmed the Army's position based upon the

MEDCOM's classification review and stated that he could see no reason to conduct another review.

August 20, 2007 - <u>Letter to Major General Schoomaker, Commander, Walter Reed AMC, Washington, D. C.</u>   In response to Mr. Claypool's letter, the Petitioner provided numerous reasons as to why a classification review was necessary.   She also attached several documents to support her conclusion.

November 5, 2007 - No response from Walter Reed AMC.   The Petitioner telephonically contacted Mr. Claypool and was told that a LTC Park was handling the response.

November 16, 2007 - Petitioner received a response from LTC Park, Office of the Center Judge Advocate, Walter Reed.   Once again, there was a reference to the MEDCOM's evaluation.   Additionally, LTC Park cited a settlement agreement against the Army (*Minehan v. Caldera*, Docket Number 98-CV-0063 PLF/JMF) in which Petitioner discharged the Army from any further claims.   The Petitioner had hoped that WRAMC would be amenable in conducting their own position evaluation of PD #00577 to ensure accuracy with the MEDCOM's result.   They would not.

THE PETITIONER CANNOT SUE THE DEPARTMENT OF THE ARMY

As stated above, the Petitioner had a previous complaint against Walter Reed Army Medical Center, Department of the Army (*Minehan v. Caldera*, Docket Number 98-CV-0063 PLF/JMF).   The settlement stipulation precluded the Petitioner from pursuing her complaint relevant to the classification matter against the Department of the Army.   It did permit her to resolve her complaint through other avenues, i.e. the United States Office of Special Counsel.

At the time the settlement stipulation was agreed to and signed by the Petitioner, she was ill and emotionally impaired. She had been under the care of a psychiatrist for approximately seven (7) years. She regrets proceeding with the matter and that she did not have proper assistance from her family.

The Petitioner contends that, to her knowledge, her former agency was notified timely of her position classification complaint and had she been permitted to resolve the matter in the United States District Court for the District of Columbia, she would have done so.

## THE UNITED STATES OFFICE OF SPECIAL COUNCIL (OSC)

## IS AN INVESTIGATIVE AGENCY

The United States Office of Special Counsel is an independent investigatory and prosecutorial agency. Its primary mission is to safeguard the Merit system in Federal employment by protecting Federal employees and applicants from prohibited personnel practices. As a prosecutorial agency, the OSC has complete discretion in its actions; however, as an investigatory agency, the law places a number of specific demands upon the OSC. The Petitioner contends that the OSC is required to:

a. Investigate a Prohibited Personnel Practice to the extent necessary to determine whether there are reasonable grounds to believe it occurred;

b. Keep the complainant informed of the status of the investigation and any actions taken by the OSC in conducting the investigation;

c. Provide specific preliminary results of the OSC investigation before terminating it;

d. Complete its investigation within 240 days or (if needed) additional time as agreed upon;

e. Refer reasonably evidenced criminal violations that emerge during its investigation to the Attorney General; and

f. Refer reasonably evidenced violations of any law, rule, or regulation (except the Prohibited Personnel Practice itself) that emerge during its investigation to the agency head and ensure that the agency head responds to the OSC.

The Petitioner contends that Walter Reed Army Medical Center, Washington, D. C. committed a Prohibited Personnel Practice and that the OSC, as an investigative authority, has jurisdiction to investigate the Petitioner's complaint.

A Prohibited Personnel Practices is defined by Title 5 of the United States Code (U.S.C.). Section 2302(b) provides that a federal employee authorized to take, direct others to take, recommend or approve any personnel action may *not*:

(The following rule is specific to Petitioner):

(12) take or fail to take a personnel action, if taking or failing to take action would violate any law, rule, or regulation implementing or directly concerning merit system principles at Title 5 U.S.C. Section 2301.

Title 5 U.S.C. Section 2301. Merit System Principles states:

(The following is specific to Petitioner):

(a) This section shall apply to –

(1) an Executive agency;

(3) Equal pay should be provided for work of equal value, with appropriate consideration of both national and local rates paid by employers in the private sector, and appropriate incentives and recognition should be provided for excellence in performance.

### THE OSC FAILED TO UPHOLD ITS INVESTIGATIVE AND ASSOCIATED DUTIES

a. The Petitioner contends that the response she received from the OSC dated May 9, 2000, applicable to the policy of filing an appeal with the OPM first, is in fact, a hollow policy, as only employees currently in a position can appeal a grade, job series, and/or title of the position they encumber. The difficulty with Petitioner's complaint is that the Petitioner no longer occupied position #00577 and even if she did, she could only appeal an action that was taken by her agency to which she disagreed. In Petitioner's case, there was a "lack of action" by her former agency; thus, there was "nothing" to appeal. The OSC policy was meaningless in Petitioner's case and should not have been required of the Petitioner.

b. The Petitioner's complaint involved well evidenced violations of Comptroller General Decisions, the Classification Act of 1949, OPM policy and regulatory guidelines, a Prohibited Personnel Practice, and a Merit Systems Principle. Although the OSC is required to refer reasonably evidenced violations of any law, rule, or regulation (the Petitioner's complaint meets that criteria) that emerge from an investigation to the agency head, i.e., the WRAMC Commander, it did not; thus, the agency did not have an opportunity to respond to the OSC with an explanation and/or corrective actions to resolve the complaint.

### WHY THE WRIT OF MANDAMUS SHOULD ISSUE

The criteria for Writs of Mandamus to issue include:

a. The Plaintiff must have a clear right to the relief;

b. The Defendant must have a clear duty to act; and

c. No other adequate remedy must be available, *Jones v. Alexander*, 609 F.2d 778 (5th Cir. 1980), *cert. denied*, 449 U.S. 832 (1980).

*a.  Plaintiff must have a clear right to the relief:*

(1) The Plaintiff (Petitioner) filed a legitimate and substantiated complaint with the United States Office of Special Counsel, MA-03-1124, alleging a Prohibited Personnel Practice by Walter Reed Army Medical Center, Washington, D. C.  The OSC wrongfully disposed of the case by requiring the Petitioner to appeal her case to the OPM first when in fact such action was prohibited by the OPM specifically because the Petitioner was a former employee and no longer encumbered position #00577.  In September 1996, WRAMC terminated her employment due to excessive absence resulting from an on-the-job illness.  The recommendation provided by the OSC was hollow, because it couldn't be accomplished.  At the time the violation occurred, the Petitioner was an employee and encumbered the position.

(2) Well evidenced allegations of specific violations of law, rule, or regulation were presented to the OSC and in spite of that, the OSC closed the Petitioner's complaint without referring the well evidenced agency violations to the Commander, WRAMC, as required by Title 5, U.S.C. 1214(e).

*b. The Defendant must have a clear duty to act:*

As previously stated, the OSC has statutory obligations to refer well evidenced violations of law, rule, or regulation to the agency head, in Petitioner's case, the

Commander, Walter Reed, and to ensure that the agency head responded to the OSC. That has not occurred.

*c. No other adequate remedy must be available:*

(1) The Petitioner wrote to numerous agencies and organizations, as shown below, for assistance in reviewing her case and obtaining a proper resolution. Her extensive writing and repetitious waiting for responses took an unanticipated number of years. She continuously met with obstacles in policy from the OSC, MSPB, and OPM and resistance from WRAMC, the MEDCOM, and Department of the Army.

Department of the Army Personnel repeatedly relied upon Ms. Grayson's evaluation (MEDCOM) without any consideration to the fact that she could have erred and according to Paul Katz, former Assistant Director, United States Office of Personnel Management, Ms. Grayson did emphatically err.

Petitioner's efforts at the OSC were also unsuccessful. If the OSC does not make the required referral of well evidenced wrongdoing, relevant to the Petitioner's claim of a Prohibited Personnel Practice, to the agency head, i.e., the Commander, Walter Reed AMC, then the agency head does not have to respond to the complaint as required by law, and the relief that should flow to the Petitioner as a direct or indirect result of the agency head's response will not occur. Although the MEDCOM subsequently addressed the classification evaluation matter with the Petitioner, the MEDCOM was *not* the Petitioner's former employer or administrative agency. Furthermore, the Petitioner maintains that the result reached by the MEDCOM was done so in a flawed manner reflecting a GS-11 result rather than a GS-12 as recognized by Paul Katz and other classifiers. As stated above, Mr. Katz had <u>designed</u> and <u>managed</u> the government's position classification system covering

**42**

approximately two million workers. He currently remains an expert in the position classification field.

Petitioner's efforts at the Merit Systems Protection Agency also produced a negative result. She was told that the agency only handled Whistle Blower complaints; thus, she was referred back to the OSC.

Petitioner's experience with Congressman Chris Van Hollen and his staff was also fruitless, as Walter Reed ultimately responded to the Congressman's office citing the MEDCOM's result. At that point, the Petitioner's complaint was closed without any further action. The discussed meeting with WRAMC officials did not occur.

As of the current date, the Petitioner has been unable to obtain the referenced position evaluation from her former employer to include consideration for a proper grade determination based upon an accurate classification evaluation for position #00577.

<u>Agencies/Organizations Contacted via Written Correspondence</u>

Michael Dunn, Commander, Walter Reed Army Medical Center

Major General Schoomaker, Commander, Walter Reed AMC

Inspector General's Office, North Atlantic Regional Medical Command

(NARMC) (formerly Walter Reed AMC)

Office of the Inspector General, MEDCOM, For Sam Houston, TX

U. S. Office of Special Counsel (OSC)

Merit Systems Protection Board (MSPB)

Assistant Director for Oversight, U. S. Office of Personnel Management

Assistant Secretary of the Army, Manpower and Reserve Affairs

> Assistant Secretary of the Army for Financial Management and
> Comptroller
>
> Congressman Chris Van Hollen
>
> LTG Kevin Kiley, Commander, MEDCOM, Fort Sam Houston, TX
>
> Assistant Executive Officer, Office of the Surgeon General (OTSG)
>
> Major General Gale Pollock, Office of the Surgeon General (OTSG)
>
> Office of the Center Judge Advocate, Walter Reed AMC

(2)   As previously discussed, the Petitioner cannot file a lawsuit against WRAMC or Department of the Army based upon the Stipulation Agreement as contained by *Minehan v. Caldera*, Docket Number 98-CV-0063 PLF/JMF, as it prohibits court action.

(3)   The Petitioner contends that she has exhausted ALL means of attaining any success and therefore, seeks a Petition for a Writ of Mandamus to compel the Federal sector's Investigative Agency, i.e. the United States Office of Special Counsel, to conduct an investigation relevant to the Petitioner's complaint in concert with a position evaluation result from the United States Office of Personnel Management. She further seeks monetary compensation commensurate with the position grade determination.

The Petitioner maintains that no other adequate remedy is available to her.

<u>JURISDICTION TO ISSUE A WRIT OF MANDAMUS AGAINST THE OSC</u>

It is Petitioner's understanding that the Mandamus Act provides an additional remedy where subject matter jurisdiction already exists.

The availability of mandamus relief for the claimed failure of OSC to perform its ministerial duties was suggested by *Wren v. MSPB*, 681 F.2d 867, 875 (D.C. Cir. 1982). The court in *Wren* distinguished between OSC's discretionary decisions, which it found are

**44**

not judicially reviewable, and OSC's failure, in that case, to perform its nondiscretionary and statutory obligation to conduct an investigation, which the court indicated might be subject to mandamus relief.

In Petitioner's case, the OSC failed to perform its statutory obligation to conduct an investigation of her case and to refer her complaint to the agency head (Walter Reed Army Medical Center) for response.  VERY IMPORTANT - Petitioner maintains that if an agency response were to show reliance upon the MEDCOM's position evaluation result, the Petitioner would ask that it be considered an unacceptable response, as the Classification Act of 1949 is specific to the employee's administrative agency (in Petitioner's case - WRAMC) and not to other employers or agencies.  The Petitioner makes this request to preclude a miscarriage of justice.

Additionally, the Petitioner wishes to add that the MEDCOM and Department of the Army tried, on several occasions, to be evasive in properly responding to the Petitioner's issue with position #00577 and WRAMC's obligation to conduct the classification evaluation for that specific position.

The Petitioner has pursued her complaint unrelentingly.  She prays that the Honorable Court will grant her request for Mandamus.

AVAILABLE DOCUMENTATION

The Petitioner is still in possession of her Official Personnel File 201, to include Position Description #00577.  She also has copies of the appropriate grade analysis guides from the Personnel Office, correspondence from the OSC, MSPB, and Department of the Army, as well as position classification evaluations, and the ROI from the Office of the Inspector General.  All documentation is available for review.

## CERTIFICATION

I, Susan H. Minehan, declare under penalty of perjury under the laws of the United

States of America that the foregoing is true and correct to the best of my knowledge and

belief.

_Susan H. Minehan_                            _March 7, 2008_
Susan H. Minehan, Petitioner                  Date Executed
13733 Town Line Road
Silver Spring, Maryland 20906-2113
(H) (301) 871-1337

F
08-499
JR

JS-44
(Rev.1/05 DC)

## CIVIL COVER SHEET

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Susan H. Minehan | US Office of Special Counsel |

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF 88888
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE

PRO SE (N/P)

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Case: 1:08-cv-00499
Assigned To : Robertson, James
Assign. Date : 3/24/2008
Description: Pro Se Gen. Civil

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government
Plaintiff

☐ 3 Federal Question
(U.S. Government Not a Party)

☒ 2 U.S. Government
Defendant

☐ 4 Diversity
(Indicate Citizenship of Parties
in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

| ☐ A. *Antitrust* | ☐ B. *Personal Injury/ Malpractice* | ☐ C. *Administrative Agency Review* | ☐ D. *Temporary Restraining Order/Preliminary Injunction* |
|---|---|---|---|
| ☐ 410 Antitrust | ☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Medical Malpractice<br>☐ 365 Product Liability<br>☐ 368 Asbestos Product Liability | ☐ 151 Medicare Act<br><br>**Social Security:**<br>☐ 861 HIA ((1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g)<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)<br><br>**Other Statutes**<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment.<br><br>*(If Antitrust, then A governs)* |

## ☐ E. *General Civil (Other)* OR ☒ F. *Pro Se General Civil*

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Immigration**
☐ 462 Naturalization Application
☐ 463 Habeas Corpus- Alien Detainee
☐ 465 Other Immigration Actions

**Prisoner Petitions**
☐ 535 Death Penalty
☒ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant

☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.

☐ 460 Deportation
☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not Administrative Agency Review or Privacy Act)

0

| □ **G.** *Habeas Corpus/ 2255* | □ **H.** *Employment Discrimination* | □ **I.** *FOIA/PRIVACY ACT* | □ **J.** *Student Loan* |
|---|---|---|---|
| □ 530 Habeas Corpus-General<br>□ 510 Motion/Vacate Sentence | □ 442 Civil Rights-Employment<br>(criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | □ 895 Freedom of Information Act<br>□ 890 Other Statutory Actions (if Privacy Act)<br><br><br>*(If pro se, select this deck)* | □ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| □ **K.** *Labor/ERISA (non-employment)* | □ **L.** *Other Civil Rights (non-employment)* | □ **M.** *Contract* | □ **N.** *Three-Judge Court* |
|---|---|---|---|
| □ 710 Fair Labor Standards Act<br>□ 720 Labor/Mgmt. Relations<br>□ 730 Labor/Mgmt. Reporting & Disclosure Act<br>□ 740 Labor Railway Act<br>□ 790 Other Labor Litigation<br>□ 791 Empl. Ret. Inc. Security Act | □ 441 Voting (if not Voting Rights Act)<br>□ 443 Housing/Accommodations<br>□ 444 Welfare<br>□ 440 Other Civil Rights<br>□ 445 American w/Disabilities-Employment<br>□ 446 Americans w/Disabilities-Other | □ 110 Insurance<br>□ 120 Marine<br>□ 130 Miller Act<br>□ 140 Negotiable Instrument<br>□ 150 Recovery of Overpayment & Enforcement of Judgment<br>□ 153 Recovery of Overpayment of Veteran's Benefits<br>□ 160 Stockholder's Suits<br>□ 190 Other Contracts<br>□ 195 Contract Product Liability<br>□ 196 Franchise | □ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

☒ 1 Original Proceeding  □ 2 Removed from State Court  □ 3 Remanded from Appellate Court  □ 4 Reinstated or Reopened  □ 5 Transferred from another district (specify)  □ Multi district Litigation  □ 7 Appeal to District Judge from Mag. Judge

---

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

28 USC 1361

---

**VII. REQUESTED IN COMPLAINT**  □ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   **DEMAND $** 0   Check YES only if demanded in complaint   **JURY DEMAND:** □ YES  ☒ NO

**VIII. RELATED CASE(S) IF ANY**  (See instruction)  □ YES  ☒ NO   If yes, please complete related case form.

DATE 3/24/08   SIGNATURE OF ATTORNEY OF RECORD  NC D

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.  COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

N:\forms\js-44.wpd